# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| RICHARD WEZNER, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 11-11084-MDC |
| | : | |
| ANTHONY F. CILIO AND | : | |
| KELLYANN CILIO | : | |
| PLAINTIFFS, | : | |
| V. | : | |
| RICHARD WEZNER AND | : | ADVERSARY NO. 11-00441-MDC |
| FELICIA WEZNER, | : | |
| DEFENDANTS. | : | |
| V. | : | |
| SECURITY ABSTRACT OF PA, INC., | : | |
| THIRD PARTY DEFENDANT. | : | |
| | : | |

## <u>OPINION</u>

BY:  MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## <u>INTRODUCTION</u>

On November 15, 2011, this Court held a hearing to address Third Party Defendant, Security Abstract of PA, Inc.'s ("Security") Motion to Dismiss Third Party Complaint ("Motion to Dismiss").  At the hearing and prior to hearing the merits of the Motion to Dismiss, this Court raised the issue of whether, consistent with *Stern v. Marshall*, 131 S.Ct. 2594 (2011), this Court lacks subject matter jurisdiction to adjudicate the claims asserted against Security by Richard Wezner and Felicia Wezner (the "Wezners" or the "Defendants") in their Third-Party Complaint (the "Third-Party Complaint").  The parties agreed that their respective pleadings and motion papers did not address the issue of this Court's

jurisdiction.  To facilitate this Court's consideration of the issue, this Court requested and the parties

agreed to submit simultaneous briefs on the issue.  Upon receipt of the parties' post-hearing briefs

addressing the issue of this Court's jurisdiction, this Court took the matter under advisement.

This Court is now in receipt of parties' briefs and is prepared to issue its decision.  Having

considered the issues raised by the parties at the hearing and in their post-hearing briefs, this Court finds

that it lacks subject matter jurisdiction over the claims asserted in the Third-Party Complaint and will

grant dismissal on that basis.  Consistent with Fed. R. Bankr. P. 7052, the following discussion constitutes

this Court's findings of fact and conclusions of law.

## Procedural History

Debtor, Richard Wezner (the "Debtor" or "Wezner"), filed for chapter 11 bankruptcy relief on

February 15, 2011 (the "Petition Date").  Plaintiffs, Anthony F. Cilio and KellyAnn Cilio (the "Plaintiffs"

or "Cilios") then initiated this adversary proceeding by filing the Complaint Objecting to Discharge of

Debtor and Requesting Other Relief dated May 27, 2011 (the "Complaint").  The Complaint named as

defendants the following parties: the Debtor; Felicia Wezner; and Citizens Bank of Pennsylvania

("Citizens Bank").  The Complaint contains eight counts: (1) an objection to the Debtor's discharge

pursuant to §§ 523 and 727 (Count I); (2) Breach of Warranty (Count II); (3) Breach of Contract (Count

III); (4) Fraud (Count IV); (5) Negligent Misrepresentation (Count V); (6) Unjust Enrichment (Count VI);

(7) Detrimental Reliance (Count VII); and (8) Quiet Title (Count VIII).  Counts I through VII are alleged

solely against the Wezners whereas Count VIII is alleged solely against Citizens Bank.  As relief for their

alleged injury, the Cilios seek a judgment against (1) the Debtor denying his discharge; (2) the Wezners in

the amount of $708,496.75 for failure to satisfy a mortgage against certain real estate sold to the Cilios;

and (3) Citizens Bank for equitable relief in the form an injunction requiring Citizens Bank to mark the

mortgage at issue as satisfied.

In response to the Complaint, the Defendants filed Debtor's Motion to Dismiss the Complaint and

In the Alternative, Motion for More Definite Statement (the "Motion to Dismiss Complaint").  In the

Motion to Dismiss Complaint, the Wezners relied upon five grounds for dismissal: (1) pursuant to

F.R.C.P. 12(b)(1) the Cilios lack standing and therefore the Complaint should be dismissed; (2) the automatic stay as provided by § 362(a)(1) bars the Cilios from filing an action to recover money damages arising from a prepetition breach of contract; (3) pursuant to F.R.C.P. 12(b)(6) the Complaint fails to state a claim and should be dismissed; (4) as required by F.R.C.P. 12(b)(7) the Complaint fails to join a necessary party; and (5) the Plaintiffs' claims are barred by the applicable statute of limitations.  In the alternative, the Wezners argued that Count I, the Cilios' § 523(a) claim, should be re-plead with particularity as required by F.R.B.P. 7012(e).

Simultaneous with the filing of the Motion to Dismiss Complaint, the Wezners also filed a Motion to Disqualify.  The Motion to Disqualify sought to disqualify the firm of Hamburg Rubin Mullin & Maxwell Corp. (the "Hamburg Firm") from representing the Cilios.  Specifically, the Motion to Disqualify alleged that the Hamburg Firm possessed an irremediable conflict of interest that prevented it from representing the Cilios in this action.  Edmund Mullin ("Mullin"), a named partner in the Hamburg Firm, is also a principal of Security.  Security acted as the title agent in the conveyance of real property from which the Plaintiffs' claims arise and the Motion to Disqualify alleged that it was Security's failure to perform its obligations, inclusive of a filing of a satisfaction of the mortgage that gave rise to the Cilios' claims.  Moreover, the Motion to Disqualify alleged the Hamburg Firm has previously represented Security in the dispute between Security, the Cilios and the Wezners.

Citizens Bank filed its Answer to the Complaint ("Citizens Answer").  In the Citizens Answer, Citizens Bank raised certain cross-claims against the Wezners.  Citizens Bank asserted a breach of contract claim in the amount of $708,496.75 plus interest accruing at the rate of $41.86 per day arising from the Wezners' failure to make payments on a home equity line of credit ("HELOC") and the Wezners' conveyance of the Property to the Cilios.  In addition, Citizens Bank asserted an unjust enrichment claim against the Wezners.  Finally, Citizens Bank asserted a claim for fraud based on Citizens Banks' allegation that the Wezners concealed the conveyance of the real estate to the Cilios. Citizens Bank did not include a claim for nondischargeability.

On August 19, 2011, the Wezners responded to Citizens Banks' cross-claims by filing a Motion

to Dismiss the Cross Claims (the "Motion to Dismiss Cross Claims").  In the Motion to Dismiss Cross

Claims, the Wezners made three arguments: (1) Citizens Bank's cross-claims consist of a state law

contract claim that may not be prosecuted as an adversary proceeding; (2) Citizens Bank failed to plead

its fraud claim with the requisite particularity as required by F.R.C.P. 9(b); and (3) the gist of the action

doctrine bars Citizens Bank from recasting its breach of contract claims as tort claims.

On September 6, 2011, this Court held a hearing on the Wezners' Motion to Dismiss Complaint,

Motion to Disqualify, and Motion to Dismiss Cross Claims.  At the hearing, this Court denied the Motion

to Disqualify finding that the interests of Security could not be imputed to the law firm representing the

Cilios simply due to the status of one of the firm's partners also being a shareholder of Security.[1]  For the

reasons stated on the record, this Court also found that it had no jurisdiction over the claims brought by

the Cilios against Citizens Bank.  On that basis, this Court dismissed Citizens Bank as a party to this

action and dismissed all claims brought by and against Citizens Bank.[2]  As for the Wezners' Motion to

Dismiss Complaint that sought to dismiss the Complaint on the basis that the Cilios possessed no claim

against the Debtor and therefore did not have standing, this Court found that the Cilios possessed a

contingent right to payment from the Debtor and therefore had standing to proceed with this

nondischargeability action.[3]  This Court also ordered the Wezners to file an answer to the remaining

counts of the Complaint.

On September 15, 2011, the Wezners filed their Answer (the "Answer").  In addition to their

---

[1] All parties agreed that the shareholder/partner played no role in the underlying transaction and therefore would have no knowledge that would possibly render him a witness in these proceedings.

[2] On August 18, 2011, Citizens Bank filed a third party complaint against Security (the "Citizens Bank Complaint"). The Citizens Bank Complaint was subsequently dismissed by this Court for lack of jurisdiction.

[3] Under Pennsylvania law, it appears that a terre-tenant does not possess a right to payment from the mortgagor unless the terre-tenant first satisfies the outstanding mortgage.  *U.S. Steel Homes Credit Corp. v. South Shore Development Corp.*, 419 A.2d 785, 787-89 (Pa. Super. 1980) (recognizing that terre-tenant had no rights against mortgagor until terre-tenant paid off existing mortgage balance).  Upon satisfaction of the mortgage, the terre-tenant is then subrogated to the rights of the mortgagee against the mortgagor.  *See, e.g., Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357 (3rd Cir. 1992) (stating that a claimant must have paid the creditor to be subrogated to the creditor's rights).  Therefore, at present, the Cilios' have a contingent right to payment from the Wezners which appears to be sufficient to confer standing upon the Cilios' to proceed with this nondischargeability action.  *See, e.g., In re Burton*, Bky. No. 08-50104, 2009 WL 537163, at *86 (Bankr. E.D. Tenn. Feb. 20, 2009) (allowing contingent creditor to proceed in nondischargeability action despite the fact that it had not yet paid the direct creditor and therefore was not yet subrogated to the direct creditor's rights).

Answer, the Wezners filed the Third-Party Complaint against Security alleging Security to be solely liable to the Cilios or, in the alternative, that Security is liable to the Wezners by way of contribution or indemnification for all losses the Wezners may suffer as a result of the prosecution of the Cilios' claims against the Wezners.  In addition, the Third-Party Complaint purports to "incorporate" all of the Cilios' claims alleged in the original Complaint and replead them against Security.[4]

On October 17, 2011, Security filed the Motion to Dismiss.  The Motion to Dismiss seeks dismissal of the Third-Party Complaint for the following reasons: (1) F.R.C.P. 14(a) does not permit joinder of a third-party defendant on the theory that the third-party defendant is solely liable to the Plaintiffs; (2) Pennsylvania's economic loss doctrine bars the Defendants' claims for contribution and indemnification; (3) the Defendants have failed to state a claim for contractual or common law indemnification; and (4) the Defendants have failed to state a claim for contribution.

On November 15, 2011, this Court held a hearing on Security's Motion to Dismiss.  Counsel for the Wezners and Security both appeared at this hearing.  Before this Court heard any arguments on the Motion to Dismiss, this Court advised the parties of its concerns with regard to whether, pursuant to the Supreme Court's then recent decision, *Stern v. Marshall*, 131 S.Ct. 2594 (2011), this Court lacks subject matter jurisdiction to hear the Wezners' claims against Security.  As discussed above, this Court requested that the parties brief the issue and took the matter under advisement.

## FACTUAL BACKGROUND

On February 6, 2003, the Wezners obtained a HELOC from Roxborough Manayunk Bank ("Roxborough").[5]  To secure the HELOC, the Wezners executed an Open-End Mortgage in the amount of $600,000 (the "Mortgage") that was recorded on February 18, 2003, at the Office of the Montgomery County Recorder of Deeds.  The Mortgage granted to Roxborough a lien on certain real property located at 108 Hampton Lane, Whitemarsh, Pennsylvania (the "Property").  The Mortgage was originally in the

---

[4] This Court notes that the Wezners' attempt to plead their claims by "incorporation" violates Fed. R. Civ. P. 10(b) that requires: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).
[5] Citizens Banks is the successor by merger to Roxborough.

amount of $600,000.  By a Modification of Mortgage dated March 26, 2003, the Mortgage was later

modified to increase its amount to $900,000.

On August 16, 2005 (the "Date of Closing"), the Wezners conveyed the Property to the Cilios for

$1,800,000.  In connection with the conveyance, the parties executed an Indenture dated August 16, 2005

(the "Indenture").  The Indenture contained the following covenant:

> "And said Grantors, for themselves and their heirs, executors and administrators, do, by
> these presents, covenant, grant and agree, to and with the said Guarantee, their heirs and
> assigns, that they, the said Grantors, and their heirs, all and singular the hereditaments
> and premises herein descried and granted, or mentioned and intended so to be, with the
> appurtenances, unto the said Grantors, their heirs and assigns, against them, the said
> Grantors, and their heirs, will warrant and defend against the lawful claims of all persons
> claiming by, through or under the said Grantors but not otherwise."

Complaint, Exh. D.

Simultaneously, the Wezners executed an Affidavit dated August 16, 2005 (the "Affidavit").  In

the Affidavit, the Wezners warranted "there are no liens or encumbrances (Mortgages, Deeds of Trust,

Judgments, Tax Liens, Mechanics Liens, etc.) known to the undersigned which are not being properly

provided for in this transaction."  Complaint, Exh. F.  The Affidavit was made on behalf of Fidelity

National Title Insurance Company ("Fidelity"), the title insurer for the Cilios.  As stated in the Affidavit,

> this affidavit is made for the purpose of enabling Fidelity National Title Company to remove
> certain objection from Interim Binder issued under above cited number, and affiant/s aver/s the
> foregoing statements are true and correct to the best of his/her/their knowledge and belief… It is
> [Fidelity's] function to insure that the Buyer is obtaining the quality of title called for in the
> Agreement of Sale between the Buyer and the Seller.  It is further our function to insure that the
> Lender secures the lien priority required in order for the Lender to make the loan.

Complaint, Exh. F.

The Cilios allege and the Wezners admitted that as of the Date of Closing, the HELOC had a zero

balance.  The Cilios further allege that as a result of the Wezners' representation made to Fidelity in the

Affidavit, the Wezners had an obligation to insure that the Mortgage was satisfied.  In response, the

Wezners argue that they owed no obligation to insure that the Mortgage was marked satisfied.  Rather, the

Wezners attribute this obligation to Security.  The Wezners specifically allege that Security failed to file

the mortgage satisfaction piece.  None of the papers filed with this Court contain any averment with

6

regard to why Security failed to mark the Mortgage as satisfied.

All parties agree that the failure to mark the Mortgage satisfied was not discovered by any of the parties until sometime during the year of 2009.  In the interim period between the Date of Closing when the HELOC had a zero balance and the parties' discovery that the Mortgage had not been satisfied, the Wezners continued to draw on the HELOC.  As of the commencement of this adversary proceeding, the Wezners had drawn $708,496.75 on the HELOC, all of which remained unpaid and outstanding.

## DISCUSSION

Although the parties did not raise the issue of whether this Court has subject matter jurisdiction over the claims asserted by the Third-Party Complaint, this Court is obligated to address the issue.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Marin v. Leslie*, 337 Fed. Appx. 217 (3d Cir. 2009) (holding that courts are obligated to raise questions that are jurisdictional in nature); *In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1176 (3d Cir. 1996).  Bankruptcy courts are courts of limited jurisdiction that may adjudicate four categories of proceedings: cases under title 11 (the bankruptcy itself); proceedings "arising under title 11"; proceedings "arising in" a bankruptcy case; and proceedings "related to" a bankruptcy case.  *In re Exide Technologies*, 544 F.3d 196, 205 (3d Cir. 2008).  As stated by the Third Circuit:

> The first three categories are 'core' proceedings in which the bankruptcy court has power to hear, decide, and enter orders and judgments.  The fourth category, 'related to' proceedings, are 'non-core' proceedings, which the bankruptcy court can hear, but in which it can only submit proposed findings of fact and conclusions of law to the district court, not issue orders.

*Id.*, 544 F.3d at 205 (citations omitted).

Congress provided bankruptcy courts the power to "hear and determine" certain the types of proceedings that may be considered "core proceedings."  28 U.S.C. § 157(b).  Section 157(b) contains a non-exclusive list of matters that are designated as core proceedings.  The adjudication of nondischargeability claim asserted by the Cilios against the Debtor lies within this Court's core

jurisdiction. 28 U.S.C. §157(b)(2)(I).[6]  However, the Wezners may not rely on the status of the Cilios'

claim to bootstrap this Court's jurisdiction over the Wezners' claims against Security.  This Court must

independently evaluate its jurisdiction to hear the Wezners' claims against Security.  *Exide Technologies*,

544 F.3d at 220 (stating "courts must engage in a claim-by-claim analysis to determine whether a

proceeding is core").

The Wezners assert common law claims of indemnification and contribution against Security.

Security has not filed a claim against the Debtor's estate and Security has not consented to and in fact

opposes, the adjudication of the Third Party Complaint by this Court.  The Wezners' claims are not core

because they do not invoke a substantive right provided by title 11 and do not arise only in the context of

bankruptcy case.  *See, e.g., Exide Technologies*, 544 F.3d at 206 (discussing standard for determining

whether a claim is "core").  As such, this Court has subject matter jurisdiction over the claims asserted by

the Third-Party Complaint only if they are considered "related to" the Debtor's bankruptcy.  *Pacor, Inc. v.*

*Higgins, 743 F.2d 984, 994 (3d Cir. 1984)*; *Union Trust Philadelphia, LLC v. Singer Equipment*

*Company, Inc., et al. (In re Union Trust Philadelphia, LLC)*, 460 B.R. 644, (E.D. Pa. Nov. 3, 2011).

A related-to or "non-core" proceeding is as a "proceeding that is not a core proceeding but that is

otherwise related to a case under title 11."  28 U.S.C. § 157(c)(1).  As elaborated by the Third Circuit in

*Pacor*, "[t]he test for determining whether a civil proceeding is related to bankruptcy is whether the

outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy."  *Pacor, Inc.*, 743 F.2d at 994.  While this standard is very broad, it is not limitless.  *In re*

*Resorts Intern., Inc.*, 372 F.3d 154, 164 (3d Cir. 2004).

---

[6] The fact that the Cilios' claim is derived from unliquidated state law causes of action does not affect this Court's
jurisdiction to adjudicate the Cilios' claim.  After *Stern*, this Court retains the authority in nondischargeability
proceedings to fully adjudicate a creditor's claim including instances where a creditor's claim arises from
unadjudicated state law causes of action.  *Stern*, 131 S.Ct. at 2608 (recognizing that by filing a proof of claim a
creditor consents to the adjudication by a bankruptcy court of its claim against a debtor); *Farooqi v. Carroll (In re
Carroll)*, Adv. No. 11-03321, 2011 WL 6292880, at *9 (Bankr. N.D. Tex. 2011) (concluding that bankruptcy courts
retain the authority to liquidate creditor's underlying state law claim as a part of a bankruptcy court's determination
of the dischargeability of the creditor's claim); *Dragisic v. Boricich (In re Boricich)*, Adv. No. 2011 WL 5579062, at
*1 (Bankr. N.D. Ill. 2011) ("*Stern* left intact the authority of a bankruptcy judge to fully adjudge a creditor's
claim.").

The Wezners argue that they may rely on Security's negligence to excuse some portion of their collective liability and therefore some portion of the Debtor's liability.  On its face, the Wezners' argument does appear to carry weight because related-to jurisdiction is appropriate where a proceeding may impact a debtor's liabilities.  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991) (observing that related-to jurisdiction "will exist so long as it is possible that a proceeding may impact on 'the debtor's rights liabilities'").  However, a close comparison of the nature of the Cilios' claim against the Debtor to the Wezners' claims against Security quickly dispels this impression.

Assuming that the Wezners' allegations with regard to Security's negligence are true, Security's negligence would not absolve the Debtor of his liability for the Cilios' claim.  Even if Security breached some duty when it failed to cause the satisfaction of the Mortgage, such breach does not excuse the Wezners' conduct or the Debtor's potential liability.  Assuming this Court were to find that Security breached a duty owed to the Wezners or the Cilios, the Wezners may not as a matter of law rely on Security's negligence to excuse their alleged subsequent willful misconduct.  Restatement (Second) of Torts § 448 (2011); *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859-60 (1st Cir. 1997) (finding that debtor willfully and maliciously injured creditor when the debtor purchased shares on margin based upon shares erroneously attributed to the trust account managed by the debtor).  Section 448 states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448 (2011).

While Security may have breached a duty to the Cilios by negligently failing to mark the mortgage as satisfied, the Wezners may have also breached a separate duty by subsequently drawing on the HELOC.  While Security's alleged error may have enabled the Wezners to engage in the conduct that caused the Cilios' damages, it cannot be said that Security therefore becomes responsible to the Wezners for their *independent* decision to take advantage of the Cilios by continuing to draw on the HELOC.

Security's alleged negligence cannot serve as a defense to the Wezners' alleged intentional misconduct. As observed by the First Circuit when addressing a party's attempt to absolve itself from responsibility for its intentional conduct by reference to another party's negligent conduct:

> There is no question that Dean Witter's error gave Printy the opportunity to use Dean Witter's assets for his own gain. Printy saw the mistaken transfer of Coastal HealthCare shares as a way to make some money quickly. To put it bluntly, Printy saw a chance to make a killing at Dean Witter's expense and he took it. There was no intervening cause. The sole proximate cause was Printy's greed.

*Printy*, 110 F.3d at 860.

Here, the same is true. It appears that the Wezners purposefully availed themselves of an opportunity made available to them by Security's alleged error. The Wezners may not rely on Security's alleged error as a defense to the Cilios' claim. For this reason, this Court finds that a determination of whether Security negligently failed to mark the Mortgage satisfied will not absolve the Debtor of his potential liability. As a result, the adjudication of the Wezners' claims against Security will not have a conceivable effect on the Debtor's liability to the Cilios.

At best, the only effect on the Debtor's estate that will result from the adjudication of the Wezners' claim against Security would be to augment the Debtor's bankruptcy estate. Assuming that the Wezners' alleged intentional misconduct does not preclude them from asserting a claim against Security, their claim would have the effect of augmenting the Debtor's estate. However, this assumption appears to be precluded by applicable law discussed above. Even if this Court was to look past the apparent legal insufficiency of the Wezners' claim, this Court finds that the adjudication of the Wezners' claim against Security, despite it having a conceivable effect on the Debtor's estate would still exceed the scope of this Court's related-to jurisdiction. An examination of the Supreme Court's decision in *Stern* compels this conclusion.[7]

In *Stern*, the plaintiff-creditor in the original adversary proceeding "sought a declaration that [his]

---

[7] Admittedly, this matter is distinguishable from *Stern* in that the claims asserted by the Wezners in the Third-Party Complaint are not "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). In *Stern*, the debtor's state law counterclaims were against creditor who had initiated the dischargeability proceeding. This distinction serves to underscore lack of a jurisdictional nexus over the Third-Party Complaint.

defamation claim was not dischargeable in the bankruptcy proceedings." *Stern*, 131 S.Ct. at 2601. Both

the plaintiff-creditor's defamation and the debtor's tortious interference claim arose from private rights.

The Supreme Court recognized that absent the plaintiff-creditor's consent the bankruptcy court would not

have had the authority to adjudicate his defamation claim. The Supreme Court found that the plaintiff-

creditor's conduct, the filing his proof of claim, evidenced his consent to the adjudication of his state law

rights by an Article I court. *Id.* at 2608 ("Given Pierce's course of conduct before the Bankruptcy Court,

we conclude that he consented to that court's resolution of his defamation claim (and forfeited any

argument to the contrary)"). In response to the plaintiff-creditor's defamation claim, the debtor filed a

counterclaim against the plaintiff-creditor for tortious interference with the debtor's expectancy of an

intestate gift. However, the plaintiff-creditor objected to the bankruptcy court's adjudication of the

debtor's counterclaim on the ground that the bankruptcy court lacked authority to adjudicate the debtor's

counterclaim.

To determine the scope of the bankruptcy court's authority to adjudicate the counterclaim, the

Supreme Court relied upon a distinction between claims derived from private rights versus claims derived

from public rights first elaborated in *Granfinanciera*, *S.A. v. Nordberg*, 492 U.S. 33 (1989). On the one

hand, the Supreme Court held that, as Article I courts, bankruptcy courts do not have the authority to

adjudicate private rights. *Stern*, 131 S.Ct. at 2601 (explaining "the Bankruptcy Court in this case

exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on a

state common law claim"); *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272,

284 (1856) (stating Congress may not "withdraw from judicial cognizance any matter which, from its

nature, is the subject of a suit at the common law, or in equity, or admiralty."). On the other hand, the

Court recognized that Congress may create independent federal rights, as under the Bankruptcy Code, and

assign the adjudication of those rights to Article I courts. *Stern*, 131 S.Ct. at 2614-15. Despite

Congress's designation of "counterclaims by the estate against persons filing claims against the estate,"

28 U.S.C. § 157(b)(2)(C), as a core proceeding, the Supreme Court held that the bankruptcy court lacked

the authority to adjudicate the debtor's counterclaim against the plaintiff-creditor. *Id.* at 2620; *Thomas v.*

11

*Union Carbide Agric. Prods. Co*., 473 U.S. 568, 584 (1985) (addressing non-Article III tribunals); *In re Ortiz*, App. No. 10-3465, 2011 WL 6880651, at *5 (7th Cir. Dec. 30, 2011) (acknowledging consistent with *Stern*, Article III prohibits bankruptcy judges from entering a final judgment on a debtor's counterclaim despite it being classified a core proceeding by 28 U.S.C. § 157(b)(2)(C)); *In re Washington Mutual, Inc.*, Bky. No. 08-12229, 2011 WL 4090757, at *3 (Bankr. D. Del. Sept. 11, 2011) ("In *Stern v. Marshall*, the Supreme Court held that to find bankruptcy court jurisdiction the court must consider whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *In re Safety Harbor Resort and Spa*, Bky. No. 10-25886, 2011 WL 3849639, at *9 (Bankr. M.D. Fla. Aug. 30, 2011) (observing "[t]he holding in *Stern* is that the bankruptcy court lacked the constitutional authority to enter a final judgment on a state-law claim that was not resolved in the process of ruling on a creditor's proof of claim").

To temper the scope of its ruling, the Supreme Court explained that Article III does not permit Congress to delegate to an Article I court the judicial power "to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim*." *Stern*, 131 S.Ct. at 2620 (emphasis added). As indicated by this quote, the Supreme Court acknowledged that if a bankruptcy court will in the process of resolving any rights provided under the Bankruptcy Code necessarily resolve state law counterclaims raised by a debtor, a bankruptcy court may also make determinations relating to those state law counterclaims. *Id.* at 2620. In other words, if the elements of a creditor's claim, including the adjudication of the causes of action that give rise to the claim, include all of the elements of a debtor's counterclaim, the bankruptcy court may in the process of ruling on the creditor's claim dispose of the debtor's counterclaim. In essence, the Supreme Court recognized that principles of claim or issue preclusion may apply to the adjudication of state law rights as a result of the adjudication of federal rights by bankruptcy court. Accordingly, the Supreme Court held that a bankruptcy court's related-to jurisdiction does not extend to the adjudication of common law claims, whether based on contract or tort, that seek to augment the bankruptcy estate and are not necessarily resolved in the process of adjudicating a creditor's claim. As stated by the Supreme Court, claims that are

dependent on state law rights and that seek to augment the bankruptcy estate are "the very type of claim

that we held in *Northern Pipeline* and *Granfinanciera* must be determined by an Article III court." *Id.* at

2616.

Against this framework, this Court must determine the scope of the Plaintiffs' state law causes of

action and whether the adjudication of those state law causes of action will result in the resolution of the

Wezners' counterclaims against Security.  If so, this Court may have jurisdiction to hear the Wezners'

counterclaims.  If in adjudicating the Cilios' state law causes of action this Court will necessarily resolve

the Wezners' counterclaims against Security, this Court may decide such claims.  *See*, *e.g.*, *Safety Harbor*

*Resort*, 456 B.R. at 713 (observing that *Stern* permits bankruptcy courts to resolve claims that completely

"overlap" with adjudication of creditor's claim).

As noted previously, the Wezners' claims against Security and the Cilios' claim against the

Wezners arise from separate and independent conduct.  Security's liability stems from its alleged

negligent conduct whereas the Wezners' liability stems from their alleged intentional conduct.  While

Security is alleged to have breached a duty to the Cilios by negligently failing to mark the mortgage as

satisfied, the Wezners are alleged to have committed an intentional tort by subsequently drawing on the

HELOC.  Based on this distinction, this Court finds that the adjudication of the Cilios' claim will not

overlap with the determination of whether Security is liable to the Wezners for Security's alleged failure

to mark the Mortgage satisfied.

The fact that the Wezners' claims against Security are not co-extensive with this Court's

determination of the Cilios' nondischargeability claim is underscored by the Wezners' arguments with

regard to their right to contribution[8] or indemnification[9] from Security.  In Security's Motion to Dismiss,

---

[8] Under Pennsylvania law, a right to contribution only exists among joint tortfeasors.  *Foulke v. Dugan*, 212 F.R.D.
265, 270 (E.D. Pa. 2002).  To the extent pleadings allege that Security and the Wezners engaged in tortious conduct,
the pleadings allege that Security and the Wezners engaged in *separate* tortious conduct.  *See, e.g., Antonis v.
Liberati*, 821 A.2d 666 (Pa. Comwlth. 2003) (holding that mortgagor's fraudulent conduct, selling the property
without paying anything to mortgagee, was not intervening act that relieved attorney from liability resulting from his
failure to properly index the mortgage).  The Wezners are alleged to have committed an intentional tort whereas
Security is alleged to have only negligently performed its contractual obligations.  As a result, the Wezners cannot
state a claim for contribution and any claims for contribution from Security contained in the Third-Party Complaint

13

Security argues that Pennsylvania's Economic Loss Doctrine[10] bars the Wezners from asserting

contribution and common law indemnification claims.  In their Response, the Wezners argue that an

exception to the Economic Loss Doctrine permits them to bring tort claims despite being in privity with

Security because Security is in the business of supplying information to others.  Under this exception that

is recognized by § 552 of the Restatement (Second) of Torts, a defendant must be a "professional

information provider" that is defined as an entity "in the business of providing information for pecuniary

gain."  *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 604 Pa. 50, 56 (2009).

Without resolving whether Security is in fact a "professional information provider," this Court finds this

issue illustrative of the fact that the adjudication of the dispute between the Wezners and Security will

necessarily exceed the scope of the adjudication of the Cilios' nondischargeability claim.[11]  To adjudicate

---

should be dismissed.  *Foulke v. Dugan*, 212 F.R.D. 265, 270 (E.D. Pa. 2002) ("Where the pleadings show separate torts, rather than a joint tort, the third-party action must be dismissed.").

[9] Under Pennsylvania law, the right to indemnification is available "to a person who, *without active fault on his own part*, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Foulke*, 212 F.R.D. at 269-70 (emphasis added).  Here, by drawing on the line of credit after it should have been closed, the Wezners could be found personally responsible for the action that occasioned the Cilios' loss.

[10] Typically, the economic loss doctrine applies to product liability actions whereby plaintiffs are barred from recovery unless the product defect has caused physical or other injury to property. *See, e.g., Spivack v. Berks Ridge Corp.*, 586 A.2d 402, 405 (Pa. Super. 1991).  Economic losses are generally considered to consist of damages resulting from the loss of the contractual benefits or consequential damages resulting from a breach of contract. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3rd Cir. 1995).

[11] Although it appears that the economic loss doctrine applies to claims for negligent misrepresentation, *see, e.g., First Republic Bank v. Brand*, 2000 WL 33394627, at *5 (Pa. Comm. Pls. Dec. 19, 2000) (striking claim for negligent misrepresentation where plaintiff did not allege facts showing any physical harm or damage to property), the pleadings do not appear to allege facts sufficient to show that Security uttered a negligent representation.  To the extent Security did provide information regarding the transaction, the pleadings reveal that such information was correct.  Under Pennsylvania law, whether a party breached a covenant against encumbrances or failed to convey good and marketable title must be determined as of the time of the transaction. *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 660 (Pa. Super. 1999) (recognizing covenant against encumbrances is "breached, if at all, at the time of conveyance"). *Leh v. Burke*, 331 A.2d 755, 762 (Pa. Super. 1974) (covenant against encumbrances breached only if encumbrances exist at the time the deed is delivered); *Berger v. Weinstein*, 63 Pa. Super. 153 (Pa. Super. 1915) ("The covenant against encumbrances is *in præsenti* and is broken when the deed is delivered, if broken at all. It does not include charges created after the execution of the contract").  Here, the parties do not dispute that at the time of the transaction the HELOC's balance was $0.00.  Therefore, no encumbrances existed as of the delivery of the deed to the Cilios. *See, e.g., Chase Manhattan Mortg. Corp. v. Advanta Corp.*, Civ. No. 01-507, 2005 WL 2234608, at *15 (D. Del. Sept. 8, 2005) ("outstanding advances on zero balance loans… are not appropriately considered 'encumbrances'"); *Colonial Capital Corp. v. Smith*, 367 So.2d 490, 492 (Ala. App. 1979) ("A paid mortgage, although unsatisfied of record, is not an encumbrance within the meaning of the covenant.").  To the extent Security was negligent, Security was negligent in performance of its duty to insure the mortgage was marked satisfied.  This action did not involve the provision of information and therefore does not trigger § 552 liability.  Had Security caused the mortgage to be marked as satisfied as it is alleged to have been obligated to do, no encumbrances would have existed after the time of delivery.

the Cilios' nondischargeability claim against the Debtor, this Court will not be required to determine whether Security is in fact a professional information provider. Like the issue of Security's alleged negligent conduct, this issue will necessarily not be resolved in the process of ruling on the Cilios' claim.

## SUMMARY

For the reasons discussed above, this Court will dismiss the Third Party Complaint for lack of subject matter jurisdiction. The scope of the Wezners' claims against Security are not encompassed by the scope of the Cilios' claim against the Debtor. The adjudication of the Cilios' nondischargeability claim is not dependent upon or coextensive with this Court's adjudication of Wezners' alleged claims against Security. Even though the successful resolution of the Wezners' claims against Security may have a positive effect on the Debtor's estate, the adjudication of the Wezners' claims against Security remain outside the scope of this Court's subject matter jurisdiction.

An Order consistent with this Opinion will be entered.

Dated: April 30, 2012

_Magdeline D. Coleman_
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

15